UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL FRANCIS DALY,
      Petitioner,

vs.                           Case No.:  3:15cv189/MCR/EMT

FLORIDA DEPARTMENT OF CORRECTIONS
SECRETARY,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Michael Francis Daly (Daly) filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 20).  Respondent (the State) filed an answer (ECF No. 39) and relevant portions of the state court record (ECF Nos. 24-1 through 24-9; ECF No. 39-1).  The court provided Daly an opportunity to file a reply (*see* ECF Nos. 40, 42), but he has not done so as of the date of this Report and Recommendation.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is

further the opinion of the undersigned that the pleadings and attachments before the court show that Daly is not entitled to habeas relief.

I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF Nos. 24-1 through 24-9; ECF No. 39-1).[1]  Daly was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2009-CF-3760, with second degree murder with a firearm (ECF No. 24-1 at 26–27 (information)).  Following a jury trial on October 24–25, 2012, Daly was found guilty as charged (ECF No. 24-7 at 151 through 24-9 at 82 (trial transcript); ECF No. 24-3 at 83 (verdict)).  On January 9, 2013, the court sentenced Daly to 30 years in prison, with a 25-year mandatory minimum and pre-sentence jail credit of 3 years and 158 days (ECF No. 24-3 at 85–92 (judgment)).

Daly appealed the judgment to the Florida First District Court of Appeal (First DCA), Case No. 1D13-414 (*see* ECF No. 24-9 at 118–39 (Daly's initial brief); ECF No. 24-9 at 141–65 (State's answer brief)).  The First DCA affirmed the judgment per curiam without written opinion on February 7, 2014 (ECF No. 24-9 at 167 (decision)).  *Daly v. State*, 135 So. 3d 292 (Fla. 1st DCA 2014) (Table).  The mandate issued April 28, 2014 (ECF No. 24-9 at 168 (mandate)).

---

[1] Citations to the state court record refer to the document numbers and page numbers assigned by the court's electronic filing system.

Daly commenced this federal habeas action on April 23, 2015 (*see* ECF No. 1 (petition)). Daly filed an amended petition (the operative pleading) on August 25, 2015 (ECF No. 20 (amended petition)).

On December 23, 2015, Daly filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (ECF No. 39-1 at 46–65 (Rule 3.850 motion)).[2] The circuit court appointed counsel to represent Daly and granted a limited evidentiary hearing on three of Daly's five claims (Grounds One, Two, and Three) (*see* ECF No. 39-1 at 75–76 (order appointing counsel and granting limited evidentiary hearing)). The evidentiary hearing was held on March 16, 2017 (ECF No. 39-1 at 133–73 (evidentiary hearing transcript)). The circuit court denied Daly's Rule 3.850 motion on March 22, 2017 (ECF No. 39-1 at 174–266 (order and attachments)). Daly, appearing pro so, appealed the decision to the First DCA, Case No. 1D17-1651 (ECF No. 39-1 at 272–313 (Daly's initial brief), 315–39 (State's answer brief)). The First DCA affirmed the circuit court's decision per curiam without written opinion on April 13, 2018 (ECF No. 39-1 at 341–42 (opinion)). *Daly v. State*, 244 So. 3d 1015 (Fla. 1st DCA 2018) (Table). The mandate issued May 11, 2018 (ECF No. 39-1 at 343 (mandate)).

---

[2] On June 13, 2016, the court stayed this case until final disposition of Daly's state post-conviction proceeding (*see* ECF No. 32).

Despite this court's directive that Daly notify this court within sixty days of the state court's final disposition of his Rule 3.850 motion (*see* ECF No. 32 (order)), Daly failed to do so.  On its own initiative, the court discovered the final disposition and issued a show cause order on March 12, 2021, directing Daly to show cause why the court should not dismiss the case for his non-compliance (ECF No. 33 (order)). Daly responded to the show cause order (ECF No. 36 (response)).  The court found Daly's asserted excuses for his non-compliance unpersuasive, but kept the procedural issue under advisement while also proceeding to a substantive disposition of this case (*see* ECF No. 37 (order)).  The State filed an answer to the amended petition on June 30, 2021 (ECF No. 39 (answer)).  The court-ordered deadline for Daly to file a reply was October 1, 2021 (*see* ECF No. 42 (order)).  As noted *supra*, the court has not received a reply.

## II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).  Even then, the petitioner must show that he is in custody "in violation of the Constitution or laws and treaties of the United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice," meaning, the error "had a substantial and injurious effect or influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

III.   DALY'S CLAIMS

**A.    Ground One:  "Petitioner was deprived of effective assistance of counsel."**

Daly asserts his trial counsel was ineffective for failing to request a jury instruction on self-defense (ECF No. 20 at 5, 15–18).  Daly asserts his self-defense theory arises from the trial testimony of two doctors and Daly's recorded statements to law enforcement.  Daly asserts Dr. Thomas Sunnenberg testified Daly suffers from hepatic encephalopathy, which causes patients to experience physical weakness and fatigue and mental instability.  Daly asserts Dr. Barry Crown testified Daly has a borderline I.Q. of 85, problems with intellectual efficiency, and impaired mental status.

Daly states during an audio/video recording while he was in the back of a patrol car after his arrest, he told authorities that the victim hit him "a couple of times"; that he (Daly) weighed 185 pounds and was "sick"; and that he (Daly) was not going to fight someone who weighed 230–245 pounds (*see* ECF No. 20 at 16–17). Daly asserts during a second audio/video recording, when he was interviewed by law enforcement at the sheriff's office, Daly stated: "[H]e just kept pushing me, pushing me, and hitting me. He physically moved me around. He hit me and knocked my glasses off, so I reached for my gun but it wasn't there. Tom [the victim] was trying to put bullets in the gun." (ECF No. 39-1 at 16). Daly states he also told authorities he and the victim were "crawling around with the gun and fighting with it," and that the victim was younger, heavier, and stronger than he (*id.*).

Daly asserts during defense counsel's argument for a judgment of acquittal (JOA), counsel argued that self-defense "was an issue in the case" (ECF No. 20 at 17). However, when the trial court asked defense counsel if he wanted a justifiable use of deadly force instruction, counsel responded, "We're not asking for self-defense." (*id.*). Daly argues defense counsel was deficient for failing to request a self-defense instruction, and the deficiency deprived the jury of the option of finding him not guilty on grounds of self-defense (*id.*).

The State concedes that Daly presented Ground One in his Rule 3.850 motion, and that "it appears" Daly exhausted the claim (*see* No. 39 at 14–16 & n.2). The

State contends the claim was adjudicated on the merits by the state court, and Daly has not satisfied the standard for habeas relief under § 2254(d) (*id.* at 16–23).

### 1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To obtain relief under *Strickland*, the petitioner must show (1) deficient performance by counsel, and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If the petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances," and reasonableness is measured "under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Strategic or tactical decisions, made after a thorough investigation of the law and facts, "are virtually unchallengeable" in an ineffective assistance claim. *Strickland*, 466 U.S. at 690.  The Supreme Court instructed that in reviewing claims of ineffective assistance the court must be mindful of the following:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (citations omitted).

As to the prejudice prong of the *Strickland* standard, the petitioner's burden of demonstrating prejudice is high.  *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002).  To establish prejudice, the petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting

*Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing *Richter*, 562 U.S. at 112).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

### 2.    Federal Review of State Court Decision

Daly presented Ground One as Ground One of his Rule 3.850 motion (ECF No. 39-1 at 48–55 (Rule 3.850 motion)).  The State entered a transcript of Dr. Barry Crown's pre-trial deposition into the post-conviction record (*see id.* at 92–132 (deposition transcript), 160–61 (evidentiary hearing transcript)).  The State also presented testimony from Daly's trial counsel, Nicholas Thomas and Jason Cromey (*id.* at 137–60) (evidentiary hearing transcript)).

Attorney Cromey testified he was "second chair" at Daly's trial (ECF No. 39-1 at 138).  Cromey testified that when he joined the defense team, Attorney Thomas had developed the defense theory of insanity, based upon Daly's diagnosis of hepatic encephalopathy (*id.*).  Attorney Cromey testified that presenting a self-defense theory to the jury would have "seriously hindered" the defense's credibility with the jury (*id.* at 139).  Cromey testified:

> The description of the series of events by Mr. Daly in the interrogation room were—we felt was a stretch, and . . . it wasn't a convincing story, anyways.  If we had gone in front of a jury and said that Mr. Daly didn't know right from wrong, didn't know what he was doing, and then at the same time argued to the jury that this—it was self-defense, we felt there was no way that the jury would believe anything [we] were saying at that point.

(ECF No. 39-1 at 139).

Attorney Cromey acknowledged that there was evidence that would have supported a self-defense theory, and that he argued for self-defense in the motions

for JOA (ECF No. 39-1 at 143–45). But Cromey reiterated that the decision to forgo

a self-defense instruction was based upon his and Attorney Thomas' belief that the

jury would not find the self-defense theory credible (*id.* at 144–46). Cromey testified

he and Thomas wanted to choose the strongest defense theory, insanity, to maintain

credibility with the jury (*id.*).

Attorney Thomas testified that it was a strategic choice to forgo a jury

instruction on self-defense, based upon his belief that insanity was a stronger

defense:

> It's essentially exactly like Mr. Cromey just said. It was a
> strategy decision based on the fact that I believed the insanity defense
> as a much stronger defense and that I would lose—I don't want to say
> credibility but it's hard to sell two theories. While they're not
> diametrically opposed to each other, the stronger theory that I believed
> would result, hopefully, in acquittal or being found not guilty by reason
> of insanity was a stronger one.

(ECF No. 39-1 at 148–49).

Attorney Thomas testified that Daly's recorded statements suggesting he

acted in self-defense "strained credibility" (ECF No. 39-1 at 153). Thomas testified

that during his consultations with Daly, Daly stated he could not remember anything

about the shooting (*id.* at 155). Attorney Thomas testified:

> And that's why, you know, I sought advice of an expert witness
> to try and help me explain how someone couldn't remember anything
> about the event: First calling and talking to Dr. Sonnenberg, who
> explained to me his [Daly's] physical health, and then retaining an
> expert to explain what was going on in Michael's brain that would make

him not be able to remember anything, and also that, if you read again Dr. Crown's testimony from the trial, as well as his deposition, Dr. Crown would explain those events like this unbelievable event that he [Daly] had with his brother [the victim] that, I think, is his basis for self-defense.  That was all confabulation.  That's the way Michael's brain—instead of—his brain wants to remember, but he can't, so he literally makes up events to fill in those holes; and that's what Dr. Crown testified.  It's confabulation.

(*id.*).  Attorney Thomas testified that the decision to forgo self-defense was not based simply on the fact that selling two theories to the jury was difficult, but that the insanity theory was a "much better" and "much stronger" defense (*id.* at 153–54).

The trial testimony of Dr. Barry Crown, referenced by Attorney Thomas, was the following:

> Q.  (By Mr. Thomas) Dr. Crown, just speaking of those materials you reviewed [including the recordings and interrogation reports], do you remember any specifics that you could point to the jury, maybe in the 911 call or in the video?

> A.  Well, there's inappropriate jocularity.  That means—well, you can't see it on the audio, but grinning.  That low level of intellectual efficiency where he says his mother is going to be pissed at him.  In the video, you can see the inappropriate jocularity, these big smiles, these big grins. . . .

> And, in addition, I haven't mentioned this before, but Michael Daly, like a lot of people who have brain problems as a result of alcohol exposure, has a tendency to confabulate.  Now, confabulate is a fancy term for filling in gaps in memory.  It's like in the example, you go up to someone and you say, how's Joe?  And the answer is, Joe's fine, I just saw him yesterday.  Well, this person doesn't even know anyone named Joe.  But they want to fill in the gaps because if you're asking them how Joe is, you must know something that they don't know that they should know.

But Michael Daly has a problem and he confabulates his answers because there are holes in his memory. His memory is down in the 7th percentile when I formally tested it. In any event, he does have memory problems. He does try to use confabulation in order to make up for those differences. In other words, he tries to confabulate in order to look more normal which is a typical response among chronic alcoholics and particularly those that have brain dysfunctions.

Q. Doctor, do you think that would explain why he gives several different versions of the events in the interrogation video?

A. Certainly. He has responsive inhibition problems, he has memory problems. And, in a general sense, confabulation, it is an intent to please, so you give the answers that someone wants.

(ECF No. 24-8 at 321–23 (trial transcript)).

The state circuit court applied the *Strickland* standard to Daly's claim (*see*

ECF No. 39-1 at 175–76). The court adjudicated the claim as follows:

The Defendant's first claim is that his counsel was ineffective for failing to request a jury instruction on self-defense. See Attachment 5, at 610. Both Mr. Jason Cromey and Mr. Nicholas Thomas testified at the evidentiary hearing that not requesting a self-defense jury instruction was a strategic decision. The Court finds that this strategic decision was reasonable.

"Strategic decisions that are reasonable under the norms of professional conduct do not constitute the ineffective assistance of counsel." Bonner v. State, 981 So. 2d 499, 502 (Fla. 3d DCA 2008). "Tactical decisions generally are for counsel to make and *will not be second guessed unless shown to be patently unreasonable*." Roesch v. State, 627 So. 2d 57, 58 n.3 (Fla. 2d DCA 1993) (emphasis added). The Court recognizes that the defense of insanity does not necessarily preclude a self-defense instruction. Martin v. State, 110 So. 3d 936 (Fla. 2013). Nevertheless, counsel's decision to present only insanity as a defense to the jury was reasonable and well-founded. See Haines

> v. Risley, 412 F.3d 285,289 (1st Cir. 2005) (Noting that "to couple a
> weak argument with a stronger one may detract from the latter.").
> Counsel was not deficient.

(ECF No. 39-1 at 176–77) (emphasis in original) (footnote citations to sentencing

scoresheet and transcript omitted).  The First DCA affirmed the decision without

written opinion.  *Daly v. State*, 244 So. 3d 1015 (Fla. 1st DCA 2018) (Table).

Where, as here, the relevant state court decision on the merits (i.e., the First

DCA's decision) does not come accompanied with the state court's reasons, the

federal court should "look through" the unexplained decision to the last related state

court decision that does provide a relevant rationale.  *See Wilson v. Sellers*, 138 S.

Ct. 1188, 1192 (2018).  The federal court should then presume that the unexplained

decision adopted the same reasoning.  *Id.*

When a state court makes a factual finding that counsel strategically decided

not to pursue a certain defense, which is a finding that the state court made here, that

finding is entitled to a presumption of correctness under § 2254(e)(1).  *See*

*Fotopoulos v. Sec'y Dep't of Corr.*, 516 F.3d 1229, 1233 (11th Cir. 2008).  Daly has

not overcome that presumption of correctness with clear and convincing evidence,

and the testimony of Attorneys Cromey and Thomas clearly supports that finding.

Therefore, the court defers to the state court's factual finding that defense counsel's

decision not to request a self-defense instruction was strategic.

The remaining question is whether the state court reasonably concluded that counsel's strategic decision was reasonable. A fairminded jurist could agree with the state court's conclusion that defense counsel's decision to forgo presenting a self-defense claim to the jury was reasonable. Even if counsel theoretically could have pursued both insanity and self-defense, counsel's choosing to pursue only the stronger theory was not constitutionally deficient, especially considering Dr. Crown's testimony that Daly's description of the events in the recordings (which was the basis for the self-defense theory) was confabulation, in other words, made up.

Further, defense counsel's choosing to argue self-defense to the **court** (in the motions for JOA) but not to the **jury** was entirely reasonable. Defense counsel had nothing to lose by arguing a weak or baseless defense theory to the trial judge outside the presence of the jury, but counsel had everything to lose (i.e., risking the jury's confidence in any defense theory) by arguing that the jury should accept a theory described by their own defense expert as made-up. *See, e.g., Heredia v. Sec'y, Fla. Dep't of Corr.*, 566 F. App'x 853, 856 (11th Cir. 2014) (affirming district court's denial of habeas relief on petitioner's claim that defense counsel was deficient for failing to argue self-defense; record supported state court's factual finding that counsel strategically decided to forgo self-defense and focus on proving that defendant's striking victim was unintentional; even if defense counsel could have

theoretically pursued both defenses, a reasonable attorney could have concluded that the lack-of-intent theory was best chance to defeat aggravated-battery charge) (unpublished but cited as persuasive authority).

Because a fairminded jurist could agree with the state court's conclusion that defense counsel's performance was not deficient, Daly is not entitled to federal habeas relief on Ground One. *See Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2101) ("[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied."); *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 910 (11th Cir. 2011) ("[O]nly 'if there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents' may relief be granted.") (quoting *Richter*, 562 U.S. at 786).

### B.    Grounds Two and Three:  "Trial court violated Petitioner's state and federal constitutional due process rights."

Daly asserts the trial court violated his due process rights by:  (1) granting the State's motion in limine, which precluded the defense from presenting a voluntary intoxication theory and jury instruction; and (2) denying defense counsel's motion for continuance or to strike the State's rebuttal expert  (ECF No. 20 at 6, 8, 19–22). Daly asserts he presented both of these claims of trial court error on direct appeal of

his conviction (*id.* at 6, 8).  Daly also asserts, "I am innocent of the crime that I was

charged and convicted of . . . ." (*id*. at 14).

The State contends Grounds Two and Three are unexhausted and procedurally

barred (*see* ECF No. 39 at 23–27).  The State contends Daly did not present these

claims of trial court error on direct appeal and cannot now return to state court to do

so (*id.* at 23–24).  The State contends Daly has not shown cause or prejudice to

excuse the procedural default, nor has Daly satisfied the "miscarriage of justice"

exception to the procedural bar (*id.* at 24–26).  Therefore, Grounds Two and Three

are barred from federal review (*id.*).

It is a long-standing prerequisite to the filing of a federal habeas corpus

petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C.

§ 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364,

365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270 (1971) (citation omitted)).  To

satisfy the exhaustion requirement, the petitioner must "fairly present" his federal

claim in each appropriate state court.  *Duncan*, 513 U.S. at 365–66; *O'Sullivan v.

Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277–78.  This is known as

the "fair presentation" aspect of the exhaustion requirement.

There is also a "procedural default" aspect of exhaustion.  A petitioner who

fails to properly raise his federal claim in state court is procedurally barred from

pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Such procedural default may arise in two ways:

> First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, *Sykes* requires the federal court to respect the state court's decision. Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

*Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999) (citations omitted).

In the first instance, the federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar, i.e., an adequate and independent state ground. *Bailey*, 172 F.3d at 1303 (citation omitted). In the second instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Id.* (citation omitted).

Daly's case falls into the second category. The state court record demonstrates that Daly did not present Ground Two or Ground Three to the state court on direct appeal (*see* ECF No. 24-9 at 118–39 (Daly's initial brief)), which was the procedurally proper means for him to challenge the trial court's rulings. *See, e.g., Barnhill v.* State, 834 So. 2d 836 (Fla. 2002) (affirming, on direct appeal, trial

court's denial of defendant's motion for continuance); *Joseph v. State*, 304 So. 3d 17, 19 (Fla. 4th DCA 2020) (holding that challenge to trial court's ruling on State's motion in limine could have and should have been raised on direct appeal). Daly cannot now return to state court to present his claims, because they are deemed abandoned. *See Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) (holding that an issue not raised in an initial brief is deemed abandoned). Grounds Two and Three are thus procedurally defaulted.

A federal court may consider the merits of a procedurally defaulted claim if the petitioner can show both "cause" for the default and "prejudice" from a violation of his constitutional right. *Sykes*, 433 U.S. at 84–85. To establish cause, a petitioner must ordinarily "demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray*, 477 U.S. at 488). Here, Daly has not alleged any reason for his procedural default of Grounds Two and Three. Therefore, he does not qualify for federal review of those claims under the "cause and prejudice" exception.

The Supreme Court has also recognized a "fundamental miscarriage of justice" exception to the procedural bar, which is satisfied where the petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish

the requisite probability, the petitioner must show that it is more likely than not that

no reasonable juror would have convicted him." *Id.* Further:

> a substantial claim that constitutional error has caused the conviction of
> an innocent person is extremely rare. To be credible, such a claim
> requires [a] petitioner to support his allegations of constitutional error
> with new reliable evidence—whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence—that was not presented at trial.

*Id.*

Here, as previously noted, Daly asserts, "I am innocent of the crime that I was

charged and convicted of under applicable Florida law" (*see* ECF No. 20 at 14).

However, Daly has not proffered any new evidence that suggests he is probably

innocent of the second degree murder. Therefore, Daly has not demonstrated he is

entitled to federal consideration of Grounds Two and Three through the

"fundamental miscarriage of justice" exception.

Grounds Two and Three are procedurally barred. Therefore, Daly is not

entitled to federal habeas relief on those claims.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a certificate

is issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.  28

U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has

made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v.*

*Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the

only question is whether the applicant has shown that 'jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists

could conclude the issues presented are adequate to deserve encouragement to

proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537

U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the

undersigned recommends that the district court deny a certificate of appealability in

its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  Thus, if there is an objection to this recommendation by either party, that

party may bring this argument to the attention of the district judge in the objections

permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the amended petition for writ of habeas corpus (ECF No. 20) be

**DENIED**.

2.    That a certificate of appealability be **DENIED**.

3.    That the clerk be directed to enter judgment accordingly and close the

case.

At Pensacola, Florida, this 25<u>th</u> day of October 2021.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**